UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DARYL KEITH BURNETT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00280-JPH-MG |
| | ) |
| SAMUEL JONATHAN BYRD Dr., | ) |
| SARA BEDWELL, | ) |
| BUTLER Sgt., | ) |
| FOSTER C.O., | ) |
| TAYLOR Ms., Nurse, | ) |
| ADONIAH MUKONA Mr., | ) |
| A. JAMES Ms., | ) |
| DANA SKINNER, | ) |
| IVY Mr., | ) |
| WATTS Mr., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Daryl Burnett Jr. is an Indiana Department of Correction ("IDOC") prisoner currently incarcerated at Miami Correctional Facility. Mr. Burnett filed this action alleging constitutional violations related to ongoing treatment for his osteoarthritis by IDOC staff while incarcerated at Wabash Valley Correctional Facility. Dkt. 10. He brings Eighth Amendment claims against IDOC defendants Butler, Foster, James, Skinner, Ivy, and Watts related to their delay or refusal of Mr. Burnett's access to medical assistance and therapy appointments, and a claim of First Amendment retaliation against Sgt. Butler for confiscating his crutches. Dkt. 18 at 4. Defendants Butler,

Foster, James, Skinner, Ivy, and Watts have moved for summary judgment.[1] Dkt. [104]. For the reasons below, that motion is **GRANTED.**

# I.
# Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the

---

[1] Medical Defendants Bedwell, Byrd, Mukona, and Taylor also seek summary judgment. Dkt. 108. Their motion will be addressed by separate order.

record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Burnett failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Burnett and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

During the time period at issue, Mr. Burnett was an inmate housed at Wabash Valley. Dkt. 105-1 at 10 (Burnett's Deposition).

At all times relevant, Defendants Sgt. Butler, Officer Foster, Ms. Skinner, Officer James, Sgt. Ivy and Sgt. Watts were employed at Wabash Valley. Dkt. 10 at 4, 10.

### B. Burnett's Medical Conditions and Access to Therapy

Mr. Burnett suffers from osteoarthritis and previously sustained a left hip injury. Dkt. 105-1 at 14-17. These conditions caused Mr. Burnett chronic pain, difficulty walking and exercising, and reduced range of motion in his hip. Dkt. 105-2 at 6 (Burnett Medical Records); dkt. 105-1 at 14-15. At times, he required assistive devices for movement including crutches. Dkt. 105-1 at 16-17.

In February and March of 2022, medical personnel prescribed physical therapy and later Theraband therapy to alleviate his condition. Dkt. 105-1 at 17; dkt. 105-2 at 32-33. Therabands are resistance bands that are used for strengthening and stretching exercises to increase mobility. Dkt. 105-3 at 2. Theraband appointments were usually conducted under the supervision of nursing staff. *Id.* Defendant Dr. Mukona facilitated Mr. Burnett's physical therapy appointments from February of 2022 to March 29, 2022, when he recommended transitioning to Theraband appointments. *See* dkt. 105-2 at 32–44; dkt. 105-1 at 17.

Medical staff would create "count letters" which would list the names of inmates who had medical appointments, including physical therapy and Theraband therapy appointments. Dkt. 105-3 at 2. Correctional staff would then permit the inmates to access those appointment in accordance with the count letter. *Id.* The inmate was given prior notice of the appointment time, and he was responsible for walking to the building where the appointment was held at the correct time. *Id.*

4

Mr. Burnett typically knew in advance the dates and times for his appointments. Dkt. 105-1 at 51.

### C. Allegations Related to Defendants' Interference with Therapy Attendance

On April 18, 2022, Mr. Burnett filed a grievance alleging that he was scheduled for Theraband therapy, but was not called to attend for the last three to four weeks. Dkt. 10-7. Mr. Burnett received a response the next day that he was discharged from physical therapy, and there was no order for Theraband therapy. *Id.* By April 22, Mr. Burnett was scheduled for Theraband appointments on Monday, Wednesday, and Friday at 1:00 PM. Dkt. 10-3 at 4.

On April 23, Sgt. Butler denied Mr. Burnett access to South OSB Building where his appointments were conducted. Dkt. 105-3 at 2; 10-3 at 2. On that day, Mr. Burnett showed up outside the building for his appointment, and Sgt. Butler called medical staff to confirm that he was on the list for that day. Dkt. 105-3 at 2–3. Medical staff told Sgt. Butler over the phone that Mr. Burnett was not to be allowed in the building, and Sgt. Butler denied Mr. Burnett entry. *Id.* On April 25, Mr. Burnett submitted a grievance stating "On 4-23-2022 Officer Foster and Sgt. Butler lied to have me denied from my right to go to my physical therapy appt." Dkt. 10-3 at 2.

Mr. Burnett submitted another grievance that day alleging that he was unable to attend Theraband appointments for over a month and "they made me miss Friday + Monday appt." Dkt. 10-6. In response, IDOC staff confirmed the dates and times of his Theraband appointments. *Id.*

In his complaint, Mr. Burnett stated:

5

> Sergeant Butler and Officer Ms. Foster intentionally denied and refused Mr. Burnett his medical attention Theraband appt. leaving him in pain, and on 5-20-2022 Ms. Bedwell confirms that Mr. Burnett was suppos[ed] to be on the past count letter for Monday, [Wednesday], and Friday at 1:00 p.m.....

Dkt. 10 at 4-5. He further alleged that:

> [T]he staff [Sergeant] Mr. Ivy, [Sergeant] Ms. Watts, Correctional Officer Ms. A. James, and Ms. Dana M. Skinner also delayed and/or refused and/or conspired with these staff, to stop or block Mr. Burnett from receiving medical treatment, because during the dates given showing my Theraband appointments were not being followed or honored. I told them to call the hospital, or look at the count letter to attend my appointments, and they would not let me attend my appointments to leave my left hip injury in pain with no proper treatment that was ordered to heal or help Mr. Burnett.

Dkt. 10 at 10.

Mr. Burnett also testified that staff failed to remind him of his appointments the day before they were to be held and purposefully made errors on count letters that would not allow him out of his cell. Dkt. 105-1 at 52-54. However, he was unable to recall specific instances or dates when this had occurred outside of the general allegations in his three submitted grievances. Dkts. 10-3 at 2; 10-6; 10-7.

### D. Confiscation of Mr. Burnett's Crutches

In February of 2022, Mr. Burnett had been issued crutches by his medical providers to aid in ambulation. Dkt. 105-2 at 44. Access to crutches was limited because inmates could misuse the crutches or use them as weapons. Dkt. 105-3 at 3. If they were not medically necessary, inmates were prohibited from possessing crutches. *Id.*

Sgt. Butler had previously been informed by medical staff that Mr.

6

Burnett was to use the crutches issued to him to walk at all times. Dkt. 105-3 at 3. On April 23, 2022, Sgt. Butler witnessed Mr. Burnett walking and running around the basketball court and passing the basketball to another inmate during recreation time. Dkt. 105-3 at 4.[2] Sgt. Butler did not know the full extent of Mr. Burnett's healthcare restrictions. Dkt. 105-3 at 4.

Correctional officers have a duty to report any safety and security threats including inmates failing to properly use medical equipment. *Id.* The same day Sgt. Butler witnessed Mr. Burnett playing basketball, he called medical staff and reported that Mr. Burnett was exercising without his crutches. Shortly thereafter, Dr. Byrd made the decision to discontinue Mr. Burnett's order for crutches, and they were confiscated. Dkt. 10-4 at 2–4. On April 24, 2024, Mr. Burnett submitted a grievance against Sgt. Butler alleging that he "improperly and illegally had my crutches taken saying I was not using my crutches." Dkt. 10-4 at 2.

## III.
## Discussion

### A. Eighth Amendment Claims against All Defendants

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429

---

[2] Mr. Burnett alleges he was participating in a game with other inmates with physical disabilities, including one inmate who was an amputee in a wheelchair. Dkt. 105-1 at 57-58.

7

U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Burnett's osteoarthritis was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that each defendant acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Burnett's] health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Burnett "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

### 1. Defendant Butler

On one occasion, Sgt. Butler did not permit Mr. Burnett to attend his Theraband appointment. Dkt. 105-3 at 2–3. Sgt. Butler was stationed at the gate outside of the South OSB Building, where Mr. Burnett had to request access to attend his appointment. *Id.* Sgt. Butler contacted medical staff to

verify that Mr. Burnett had an appointment, and medical staff instructed him not to allow Mr. Burnett into the building. *Id.* at 3. Sgt. Butler followed those instructions and told Mr. Burnett to return to his housing unit. *Id.*

Mr. Burnett made a general statement that all defendants knew about his serious health condition, because he would "let them know specifically, making them aware of the serious known injury" any time a pass to go to an appointment was denied. Dkt. 105-1 at 65. However, there is no designated evidence that Sgt. Butler was aware of Mr. Burnett's diagnosis or injury, its severity, why he needed physical therapy or Theraband appointments, or that Mr. Burnett would be harmed by not attending an appointment on that particular day. Sgt. Butler did not believe that Mr. Burnett had any urgent medical care or otherwise needed to see a medical provider immediately. Dkt. 105-3 at 2–3. Nor does the designated evidence show that Sgt. Butler could have thought that medical personnel were not otherwise providing Mr. Burnett with adequate care. *See McGee v. Parsano,* 55 F.4th 563, 569 (7th Cir. 2022) (noting that it has been "long recognized" that a correctional defendant may defer to the judgment of medical professionals as long as he has no reason to believe that medical staff is failing to treat the inmate). Dkt. 105-3 at 3. Accordingly, no reasonable juror could find that Sgt. Butler was subjectively aware of a risk to Mr. Burnett's health, or that he consciously disregarded such a risk when he declined to allow Mr. Burnett to enter the building per directions of the medical staff.

Next, Mr. Burnett argues that Sgt. Butler was deliberately indifferent regarding his access to crutches, when he informed medical staff that Mr. Burnett was exercising without using the crutches. Sgt. Butler was aware that Mr. Burnett had been issued crutches to use while walking, but unaware of any further specifics about Mr. Burnett's diagnosis or instructions related to the crutches. Dkt. 105-3 at 3–4. As a correctional officer, he was obligated to report any potential safety concerns, which included possible misuse of crutches. *Id.* As he was obligated to, Sgt. Burnett told medical staff that he saw Mr. Burnett playing basketball but had no further role in the decision to discontinue Mr. Burnett's order for crutches. *Id.* Based on these facts, no reasonable jury could conclude that Sgt. Butler was subjectively aware that Mr. Burnett would be exposed to a risk of harm without crutches or was indifferent to a medical need.

### 2. Defendants Foster, James, Skinner, Ivy, and Watts

Mr. Burnett alleges that Sgt. Butler, and Defendants Foster, Skinner, James, Ivy and Watts prevented him from attending his scheduled appointments. However, he was unable to articulate in his deposition any specific dates, details, the location where any conversations took place, or any other information related to any occurrences of the defendants denying him access to therapy appointments. Dkt. 105-1 at 39-48. Rather, he testified that he could only reiterate the statements that he had written verbatim about these defendants within his complaint *Id.* at 50-51.

10

These allegations regarding the defendants' alleged interference in his therapy attendance lack specificity and are therefore too conclusory to create a dispute of material facts. Dkt. 10 at 4-5, 10.  It is undisputed that Mr. Burnett knew when his therapy appointments were to be scheduled, and that inmates were responsible for walking to the location where their medical appointments were to be conducted. Dkt. 105-3 at 2; dkt. 105-1 at 51. Although Mr. Burnett alleges that the defendants failed to remind him of his appointments the day before they were to be held and made purposeful errors on count letters to prevent him from walking to his appointments, he has not designated any evidence to indicate that there were such errors on the count letters, or identified any basis for personal knowledge to support his speculation about any individual defendant purposefully altering the count letters. Dkt. 105-1 at 52-54; *see Simpson v. Franciscan All.*, 827 F.3d 656, 662 (7th Cir. 2016) (testimony containing "only vague, conclusory assertions about incidents outside [plaintiff's] personal knowledge" not sufficient to survive summary judgment); *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor" (cleaned up)). In sum, no reasonable juror could conclude from the designated evidence that any defendant intentionally interfered with Mr. Burnett's therapy appointments.  Therefore, Mr. Burnett cannot show that any defendant was deliberately indifferent to his need for medical care.

**B. First Amendment Retaliation Claim against Defendant Butler**

To succeed on a First Amendment retaliation claim, Mr. Burnett must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendant's decision to take the allegedly retaliatory action. *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendant to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 668, 680 (7th Cir. 2020). If the defendant can make that showing, the burden shifts back to Mr. Burnett to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

In his complaint, Mr. Burnett alleges "Sgt. Butler retaliated against Burnett with Dr. Byrd because Butler also got caught denying Burnett to attend a Theraband Appt. as shown in in Exhibit D-1. And Burnett confronted Butler and Dr. Byrd and they had Burnett's crutches taken." Dkt. 10 at 8. But Mr. Burnett filed the grievance referenced in his complaint against Sgt. Butler on April 25, 2022, two days *after* Sgt. Butler had reported Mr. Burnett's basketball activity to medical staff. Dkts. 10-4 at 2; 10-3 at 2. And Mr. Burnett does not designate evidence that Sgt. Butler knew Mr. Burnett was going to file a complaint. *See* dkt. 105-3 at 4–5.

No reasonable juror could find from the designated evidence that Mr. Burnett's grievance was a motivating factor in Sgt. Butler's decision to tell medical that he saw Mr. Burnett playing basketball. Moreover, there's no

12

designated evidence from which a juror would find that Sgt. Butler was further involved in the decision to confiscate Mr. Burnett's crutches.

As such, Sgt. Butler is entitled to summary judgment on Mr. Burnett's retaliation claim.

## IV. Conclusion

IDOC Defendants' motion for summary judgment is **GRANTED**. Dkt. [104]. The **clerk is directed** to terminate defendants Butler, Foster, James, Skinner, Ivy, and Watts from the docket. No partial final judgment shall issue. The medical Defendants' motion for summary judgment will be addressed in separate order.

**SO ORDERED.**

Date: 3/27/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DARYL KEITH BURNETT, JR.
Miami Correctional Facility
3038 W 850 S,
Bunker Hill, IN 46914

All Electronically Registered Counsel